WALTER M. ALDRICH, Plaintiff, v. CITY OF SYRACUSE and Others, Defendants.

ARTHUR MORRIS, Plaintiff, v. CITY OF SYRACUSE and Others, Defendants.*

Supreme Court, Onondaga County, August 14, 1925.

*George R. Fearon*, for the plaintiffs.

*Frank W. Baker*, for the defendants.

EDGCOMB, J. I am called upon to decide whether the defendants can legally stop the motor buses on the Syracuse-Cortland and Syracuse-Watertown bus lines from running in the city of Syracuse.

If the facts upon which my decision must rest were in dispute, I should hesitate to decide these motions upon the merits, as the same questions arise here which must be determined upon the trial of the actions themselves. But counsel on both sides have assured me that, notwithstanding the voluminous affidavits submitted, there is no serious dispute as to the facts, and that the question before me is one of law.

In 1921 the common council of the city of Syracuse passed two ordinances, giving permission and consent to one George R. Winslowe to operate, over certain designated streets, a bus or motor vehicle line for the conveyance of persons for hire, one the so-called Syracuse-Watertown line, and the other the Syracuse-Cortland line. Winslowe accepted such consents and complied with the conditions therein imposed, obtained a certificate of convenience and necessity, invested his money, and commenced the operation of each line over the specified route. By various transfers the title to the so-called Syracuse-Watertown line passed to the plaintiff Walter M. Aldrich, and the title to the so-called Syracuse-Cortland line passed to the plaintiff Arthur Morris.

On July sixteenth last the defendants, acting through their agents and police officers, stopped the operation of the buses on each of said lines at the city limits, and forbade their entering the city or running over the streets specified in the consent of the common council.

The excuse given by the defendants for such drastic action was that said buses were being operated illegally, because the plaintiff in each action had sold his line and assigned all his rights, title and interest therein, including the consent of the common council of Syracuse, without the permission of that body, and that said lines were now being operated by such assignee.

Some months ago the plaintiffs entered into negotiations for the sale of their respective bus lines. They made application to the common council for permission to transfer the consent originally given to Winslowe to the prospective purchaser. That application

was referred to the highway committee, where it rested quietly without action for many weeks and until after the commencement of these actions. Notwithstanding these negotiations the plaintiffs insist that they, and not their prospective purchasers, are still operating these lines. That, however, is not the important question in this litigation. The dispute between the parties arose over the right of these plaintiffs to transfer the consent of the municipal authorities given back in 1921, and under which the lines have been run in the past. Defendants insist that such consent is necessary to enable a purchaser of the lines to operate. Plaintiffs take an opposite view. The parties are entitled to a clean-cut decision of that issue. I, therefore, pass the first question, because I think that these motions can be determined upon the answer to the essential issue presented.

No one would have a right to operate the bus lines in question along the streets of the city of Syracuse until he had first procured the consent of the common council to such operation, and had also obtained from the Public Service Commission of the State of New York a certificate of public convenience and necessity. (Transp. Corp. Law, § 26,* added by Laws of 1915, chap. 667, as amd. by Laws of 1919, chap. 307.)

Such consent and certificate for each of these lines was obtained by Mr. Winslowe. One's right in and to and under such consent and permission becomes property and can be assigned, unless there is some law or something in the instrument conferring the right, which abridges the privilege of transfer.

There is nothing in section 26 of the Transportation Corporations Law, or any other part of that act, which prevents or imposes any restriction or limitation upon the assignment of the permission of the municipal authorities to the operation of a bus line over the streets of the city. The above section provides that in granting such permission the municipal authorities may impose such terms and conditions as they deem proper. Without doubt the common council could, had they deemed it for the best interests of the public, have given their consent to the operation over the designated streets of the two lines in question, upon the condition that it could not be assigned or transferred without their permission. But no such terms were imposed.

So that the defendants cannot rely upon the statute or the consent itself to uphold their contention. They point, however, to chapter 36-A of the general ordinances of the city of Syracuse, adopted June 7, 1915, and rely on the provisions of that act as

---

* Now section 66 (Laws of 1926, chap. 762).

authority for their position. This is the so-called "jitney bus ordinance." As originally passed it provided that it should be unlawful for any person or corporation to operate any motor vehicle for the carriage of persons for hire at a rate of fare per passenger of fifteen cents or less upon any street in the city without first procuring a license as therein provided. Section 4 of that ordinance specified certain license fees which should be paid for each motor vehicle operated by the applicant. That section contained the following provision, which the defendants say is broad enough to sustain their contention, and which constitutes the authority for their action: "No license granted pursuant hereto shall be transferred to any other person, firm or corporation without the consent of the Common Council, a memorandum of which shall be endorsed on the license and license register by the City Clerk."

There is very grave doubt whether this ordinance applies to the bus lines in question. It was passed long before there were any such lines in Syracuse, to meet a situation which arose during a strike on the local trolley system, when the owners of numerous "Fords" commenced transporting passengers in the city for a five-cent fare. Many of the drivers were irresponsible, and the council properly determined to control that situation. By its terms the ordinance only applied to vehicles carrying passengers for a fare of fifteen cents or under. Here the minimum fare is twenty-five cents.

Section 4, of which section this particular provision is a part, provides that upon the passage of an ordinance by the common council and its approval by the mayor of the application for the license to operate the bus line itself, a license shall be issued to the applicant by the city clerk and countersigned by the mayor upon the payment of the required fees, for the operation of the particular vehicles to be used in the service, and that the mayor, in his discretion, may refuse to countersign such license; and that each such license shall refer to certain dates and specify the number of motor vehicles to be operated pursuant thereto, together with the carrying capacity of each.

It is also very questionable whether the license referred to, the transfer of which was prohibited without the consent of the common council, is the consent referred to in the Transportation Corporations Law. While the word "license" is often used synonymously with the words "grant" or "permission," it has another meaning, namely, the certificate or the document itself which gives the permission in question. I think that it is the latter sense in which the word is used in the ordinance.

There seems to be a distinction in the ordinance itself between the license or permission of the council to carrying on the business defined, and the certificate or document permitting the operation of the particular vehicles used in the business. The provision itself requires a memorandum to be indorsed by the city clerk on the license and license register. No register of the consent required by the statute to operate is ever kept. If the license specified referred to the grant of the council to carry on the business itself, why should it be signed by the clerk and countersigned by the mayor? The clerk has nothing to do with the action of the council in granting or withholding permission to do an act. The mayor does not countersign an ordinance. He either signs or vetoes the act, or permits it to become a law without his signature. The statute gives him authority to do either. But here the ordinance says that he may withhold his consent if he thinks proper. Clearly the license mentioned in that section refers to the document or certificate which gives the applicant the right to operate the particular vehicle therein mentioned.

But a further discussion of this question is useless. It matters not if the provisions of the ordinance above quoted, and upon which defendants rely, apply and are broad enough to cover the transfer of the consents in question, because long before these assignments were made, if in reality they actually have been made, the very provision upon which the defendants now base their right to stop the operation of these buses was stricken from the ordinance in question by an amendment passed by the very council which now insists on its right to approve any transfer. On July 21, 1924, the common council passed an ordinance amending section 4 of chapter 36-A of the general ordinances of the city of Syracuse, and added section 4-a. Since that date there is no provision in the ordinance requiring the consent of the common council to the transfer of any license or grant given by that body to any applicant to operate any kind of a bus or motor vehicle.

There being nothing to prevent the assignment of the consents in question, the assignee has the same legal right to operate thereunder which the original grantee had. The right of Winslowe is not questioned. The defendants are clearly acting beyond their rights in interfering with the operation of these buses in the city, and should be restrained from further doing so.

Motion in each case granted, with ten dollars costs.